**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**CLIFTON PARK FOOD CORP.,**

               **Plaintiff,**     1:08-cv-1200
                                                  (GLS/DRH)
       **v.**

**TRAVELERS INDEMNITY COMPANY,**

               **Defendant.**
_____

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| **FOR THE PLAINTIFF:** | |
| Feuerstein, Smith Law Firm<br>17 St. Louis Place<br>Buffalo, NY 14202 | DAVID B. SMITH, ESQ.<br>ARMEN J. NAZARIAN, ESQ. |
| **FOR THE DEFENDANT:** | |
| Kenney, Shelton Law Firm<br>14 Lafayette Square<br>Suite 510 Rand Building<br>Buffalo, NY 14203 | JUDITH TREGER SHELTON,<br>ESQ.<br>JESSE J. COOKE, ESQ. |
| Office of Theresa J. Puleo<br>900 Watervliet Shaker Road<br>Albany, NY 12205 | THERESA J. PULEO, ESQ. |

**Gary L. Sharpe
District Court Judge**

## **MEMORANDUM-DECISION AND ORDER**

### **I. Introduction**

Plaintiff Clifton Park Food Corp. brought this action against defendant Travelers Indemnity Company, alleging that Travelers is obligated to defend and/or indemnify it in an underlying personal injury action brought by third-parties Marilyn Ripperger and her husband, Francis J. Ripperger, Jr. (Compl., Dkt. No. 1:1.) Pending is Travelers' motion for summary judgment pursuant to FED. R. CIV. P. 56(c) seeking a declaration that Travelers is not obligated to defend and/or indemnify Clifton Park. (Dkt. No. 16.) For the reasons that follow, Travelers' motion is granted.

### **II. Background**

Clifton Park Food Corp. operates an International House of Pancakes restaurant (IHOP) in Clifton Park, New York. (Compl. ¶ 1, Dkt. No. 1:1; Miano Aff. ¶ 3, Dkt. No. 17:2.) Travelers Indemnity Company, an insurance company, issued a commercial general liability policy to Clifton Park, the named insured, covering the Clifton Park IHOP premises for the period of October 24, 2006, to October 24, 2007. (Def. SMF ¶ 3, Dkt. No. 6:1.) Under the policy, Clifton Park is required to notify Travelers "as soon as practicable of an 'occurrence' or an offense which may result in a claim."

2

(Shelton Aff., Ex. C, Policy at § IV, Dkt. No. 16:6.)

On April 21, 2008, third-parties Marilyn Ripperger and Francis J. Ripperger, Jr. brought an action in New York State Supreme Court, Greene County, for injuries allegedly sustained as a result of Clifton Park's negligence. (*See generally* Compl., ¶ 5, Dkt. No. 1:1.) The Rippergers allege that they were patrons at the Clifton Park IHOP on the night of October 19, 2007, when Mrs. Ripperger slipped and fell on a wet floor outside the ladies room. (*See id.*)

At the time of the incident, Clifton Park employee Anna Olsen was on duty in her capacity as server and "Crew Chief" at the Clifton Park IHOP. (Olsen Aff. ¶ 3, Dkt. No. 17:3.) At approximately 10:00 p.m., a customer advised Olsen that a woman, Mrs. Ripperger, was lying on the floor near the restrooms. (Def. SMF ¶ 11, Dkt. No. 16:1.) Olsen went to Mrs. Ripperger, who told Olsen that she had slipped and hurt her ankle. (*Id.* at ¶ 14.) According to Mrs. Ripperger, the slip caused her foot to collide with a wall and her head to collide with the ground. (*Id.* at ¶ 9.) Olsen helped Mrs. Ripperger from the floor onto a bench in the foyer area, and alerted Mr. Ripperger that his wife had fallen. (*Id.* at ¶¶ 12, 13.) Upon Mrs. Ripperger's request, Olsen called an ambulance. (*Id.* at ¶ 15, 16.) Prior to

3

the ambulance's arrival, Olsen collected the Rippergers' names, address, and telephone number. (*Id.* at ¶ 17.) At the time of the accident, it was Clifton Park's policy to collect such information from any injured person for purposes of filling out an accident report. (*Id.* at ¶ 21.) Upon arrival, the paramedics, according to Mrs. Ripperger, placed a cervical collar on her, examined her foot, placed her on a stretcher, and loaded her into the ambulance, which transported her from the scene. (*Id.* at ¶ 18, 19.) Soon after the accident, Olsen notified a Clifton Park General Manager of what had occurred and provided her with the contact information she collected from the Rippergers. (*Id.* at ¶ 20.) Then, within a few days of the accident, the General Manager informed another Clifton Park manager of what had happened. (*Id.* at ¶ 23.)

Travelers first received notice of the October 19, 2007 accident on April 8, 2008, when it received a copy of a March 24, 2008 letter of representation that the Rippergers' attorney sent to Clifton Park. (*Id.* at ¶ 24; Def. Mem. of Law at 5, Dkt. No. 16:2.) Upon receipt of the letter, Travelers contacted Rick Miano, Clifton Park CEO, and Tony Amodio, then District Manager of Clifton Park, inquiring about the accident. (*See* Pl. Mem. of Law at 3, Dkt. No. 17.) On April 24, 2008, Travelers issued a

letter to Clifton Park disclaiming coverage for the incident on the basis that Clifton Park failed to provide timely notice of the occurrence. (Def. SMF ¶ 25, Dkt. No. 16:1.) On May 10, 2008, the Rippergers filed the underlying action against Clifton Park. (*Id.* at ¶ 26.)

On September 30, 2008, Clifton Park filed suit against Travelers in New York State Supreme Court, Saratoga County, seeking a declaratory judgment that Travelers was obligated to defend and/or indemnify it in the action commenced by the Rippergers. (*See* Compl., Dkt. No. 1:1.) Travelers then sought removal of the action to the United States District Court for the Northern District of New York based on diversity jurisdiction under 28 U.S.C. § 1332(a)(1). (*See* Dkt. No. 1.) The present action was removed to this court on November 7, 2008. (*Id.*) Following discovery, Travelers moved for summary judgment pursuant to FED. R. CIV. P. 56(c). (Dkt. No. 16.)

### III. Standard of Review

The standard for the grant of summary judgment is well established and will not be repeated here. For a full discussion of the standard, the court refers the parties to its previous opinion in *Bain v. Town of Argyle*, 499 F. Supp. 2d 192, 194-95 (N.D.N.Y. 2007).

5

## IV. **Discussion**[1]

Travelers argues that Clifton Park failed to give timely notice of the Ripperger incident and therefore did not meet a condition precedent to coverage under the insurance contract. (*See* Def. Mem. of Law at 6-10, Dkt. No. 16:2.) In response, Clifton Park contends that its delay in notifying Travelers was reasonable and should be excused. (*See* Pl. Mem. of Law at 6-12, Dkt. No. 17.)

In general, compliance with notice requirements in an insurance policy is "a condition to the insurer's liability."[2] *Sec. Mut. Ins. Co. of N.Y. v. Acker-Fitzsimons Corp.*, 31 N.Y.2d 436, 440 (N.Y. 1972) (citing *Rushing v. Commercial Cas. Ins. Co.*, 251 N.Y. 302, 304 (N.Y. 1929)). Accordingly, a failure to satisfy a policy's notice requirements with timely written notice "vitiates the contract" and provides a complete defense to liability. *Deso v. London & Lancashire Indem. Co.*, 3 N.Y.2d 127, 129 (N.Y. 1957) (citations

---

[1] Neither party disputes that New York law controls here. Accordingly, the court will apply New York State substantive law and federal procedural law. *See Gasperini v. Ctr. for Humanities*, 518 U.S. 415, 427 (1996); *see also Hanna v. Plumer*, 380 U.S. 460, 473-74 (1965); *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938); *McCarthy v. Olin Corp.*, 119 F.3d 148, 153 (2d Cir. 1997).

[2] As the Second Circuit recognizes, "[p]rompt notice permits the insurer to investigate the facts on which the claim is predicated and to adjust its books in order to maintain a proper reserve fund in light of the insured's claim." *Utica Mut. Ins. Co. v. Fireman's Fund Ins. Cos.*, 748 F.2d 118, 121 (2d Cir. 1984).

6

omitted). To be timely under New York law, "written notice [must] be given within a reasonable time under all the circumstances." *Id.* (citation omitted).

Where notice is delayed, the burden is on the insured to "explain or excuse delay in giving notice and show it to be reasonable." *Acker-Fitzsimons*, 31 N.Y.2d at 441 (citation omitted). Valid excuses include lack of knowledge that an accident has occurred, a good-faith belief in non-liability, or absence from the state. *See id.* The question of whether notice was given within a reasonable time is generally one for the jury. *Deso*, 3 N.Y.2d at 129 (citation omitted). However, that question may be answered as a matter of law when: "(1) the facts bearing on the delay in providing notice are not in dispute and (2) the insured has not offered a valid excuse for the delay." *New York v. Blank*, 27 F.3d 783, 795 (2d Cir. 1994); *Can-Am Roofing v. Am. States Ins. Co.*, 229 A.D.2d 973, 974 (4th Dep't 1996) ("[W]here the insured offers no excuse or an excuse unsupported by credible facts, the issue of reasonableness may be determined by the court as a matter of law." (citation omitted)).

Under New York Law, "there is no inflexible test of reasonableness," particularly where the reasonableness inquiry is "heavily dependent" on the

7

factual context. *Mighty Midgets, Inc. v. Centennial Ins. Co.*, 47 N.Y.2d 12, 20 (N.Y. 1979). Nonetheless, absent mitigating circumstances, "delays for one or two months are routinely held 'unreasonable.'" *Am. Ins. Co. v. Fairchild Indus., Inc.*, 56 F.3d 435, 440 (2d Cir. 1995) (citations omitted). The same is true for delays of four and five months, especially where the insured has immediate knowledge of the accident. *See, e.g.*, *Avery & Avery, P.C. v. Am. Ins. Co.*, 51 A.D.3d 695, 697 (2d Dep't 2008) (four months); *Kaesong Corp. v. United Nat'l Specialty Ins. Co.*, No 07 CV 2897, 2008 WL 1902684, at *3 (E.D.N.Y. Apr. 25, 2008) (five months); *see also Blank*, 27 F.3d at 796 (2d Cir. 1994) (collecting cases).

Here, the facts regarding delay are undisputed. Travelers did not learn of the Ripperger incident until more than five months after it occurred. As noted above, such a delay is generally unreasonable as a matter of New York law. However, Clifton Park contends that its delay should be excused because: (1) Clifton Park had no knowledge of the accident; (2) Clifton Park had a reasonable belief in non-liability; and (3) the delayed notice did not prejudice Travelers. (*See* Def. Mem. of Law at 6-12, Dkt. No. 17.) Clifton Park also argues that Travelers should be estopped from disclaiming coverage because it engaged in unfair litigation practices. (*See*

*id.* at 13-15.)

## A. Lack of Knowledge

Clifton Park claims that it had no knowledge of the Ripperger incident until April 2008, when Miano, its CEO, and Amodio, its District Manager, first received notice from Travelers.  According to Clifton Park, because Miano and Amodio were "the primary contacts with Travelers who would pass along notice of [the] fall if it appeared there would be a claim," the obligation to notify Travelers did not arise until Miano or Amodio was actually aware of the accident.  (*See* Pl. Mem. of Law at 10-11, Dkt. No. 17.)  The court disagrees.

It is well settled under New York law that "[a] principal is bound by notice to or knowledge of his agent in all matters within the scope of his agency [even though] the information may never actually have been communicated to the principal."[3]  *Farr v. Newman*, 14 N.Y.2d 183, 187 (N.Y. 1964) (citation omitted).  This principle applies equally in the context of insurance notice requirements.  *See, e.g.*, *White v. City of New York*, 81

---

[3] "This rule of imputed knowledge is based upon a presumption that an agent has discharged the duty to disclose to the principal all material facts coming to his or her knowledge with respect to the subject of the agency."  *Smalls v. Reliable Auto Serv. Inc.*, 205 A.D.2d 523, 524 (2d Dep't 1994) (citing, *inter alia*, *Marine Midland Bank v. Russo Produce Co.*, 50 N.Y.2d 31, 43 (N.Y. 1980)).

9

N.Y.2d 955, 958 (N.Y. 1993); *Woolverton v. Fid. & Cas. Co. of N.Y.*, 190 N.Y. 41, 48-50 (N.Y. 1907). Thus, where the scope of an employee's agency includes the duty to report knowledge of an accident or occurrence, an employee's knowledge in that regard, even if never relayed, is imputed to the employer. *Woolverton*, 190 N.Y. at 48-50; *Paramount Ins. Co. v. Rosedale Gardens, Inc.*, 293 A.D.2d 235, 240 (1st Dep't 2002) ("[K]nowledge of an occurrence obtained by an agent charged with the duty to report such matters is imputed to the principal." (citation omitted)). This duty to report can be imposed on employees either expressly through an employer's policy, *see Wolverton*, 190 N.Y. at 49, or impliedly by virtue of an employee's supervisory status, *see id.* at 49, 50; *see also, e.g.*, *Bauer v. Whispering Hills Assocs.*, 210 A.D.2d 569, 571-72 (3d Dep't 1994) (finding supervisory-level employee's knowledge of an accident imputable to employer); *Stone & Webster Mgmt. Consultants v. Travelers Indem. Co.*, No. 94 Civ. 6619, 1996 WL 180025, at *19 (S.D.N.Y. Apr. 16, 1996) ("[N]otice of a claim or occurrence to a supervisor of employees is imputed to the insured ...."); *Olin Corp. v. Ins. Co. of N. Am.*, No. 84 Civ.1968, 2002 WL 1997927, at *4 (S.D.N.Y. Aug. 28, 2002), *vacated on other grounds*, 74 Fed. Appx. 105 (2d Cir. 2003) ("[K]nowledge of the corporation's

10

supervisory employees can generally be imputed to the corporation." (citations omitted)).

Here, it is undisputed that two Clifton Park managers, including a general manager, were aware of the Ripperger incident within a few days of its occurrence. Thus, given the managers' supervisory status and Clifton Park's policy to collect and relay accident-related information in the event of an on-premises injury, (*see* Def. SMF ¶ 21, Dkt. No. 16:1*)*, Clifton Park cannot deny knowledge of the incident. Rather, under the rule of imputed knowledge, Clifton park was vicariously aware of the accident no later than a few days after October 19, 2007, regardless of whether or when Mr. Amodio or Mr. Miano received actual notice of its occurrence. *See Woolverton*, 190 N.Y. at 48-50. Accordingly, Clifton Park's argument that it lacked knowledge of the accident is without merit.

**B.    Reasonable Belief in Non-Liability**

Clifton Park also contends that its delay in notifying Travelers should be excused because it had a good-faith belief in non-liability. (*See* Pl. Mem. of Law at 6-9, Dkt. No. 17.) This argument also fails.

An insured's "good-faith belief of nonliability may excuse or explain a ... failure to give timely notice," but only if that belief is reasonable under all

11

the circumstances.  *Acker-Fitzsimons*, 31 N.Y.2d at 441 (citations omitted).  In determining whether an insured's belief in non-liability is reasonable, the proper inquiry is whether the insured had a reasonable basis to believe that no claim would be asserted against him, "not whether the insured believe[d] he [would] ultimately be found liable for the injury."  *SSBSS Realty Corp. v. Pub. Serv. Mut. Ins. Co.*, 253 A.D.2d 583, 584 (1st Dep't 1998) (citations omitted).  This is because "[t]he duty to give notice arises when, from the information available relative to the accident, an insured could glean a reasonable possibility of the policy's involvement."  *Rosedale Gardens*, 293 A.D.2d at 239-40 (citation omitted).  Further, in assessing the reasonableness of an insured's belief, the court should consider "whether and to what extent the insured has inquired into the circumstances of the accident," *Acker-Fitzsimons*, 31 N.Y.2d at 441 (citations omitted), and "whether the insured failed to make a 'deliberate determination' in evaluating potential liability," *Phila. Indem. Ins. Co. v. Genesee Valley Improvement Corp.*, 41 A.D.3d 44, 47 (4th Dep't 2007) (citations omitted).  Indeed, where a "reasonable person could envision liability, that person has a duty to make some inquiry."  *White*, 81 N.Y.2d at 958 (citation omitted).  And absent that inquiry under such circumstances, an insured

12

cannot claim that its belief in non-liability was reasonable. *See id.* Ultimately, "[t]he insured bears the burden of demonstrating the reasonableness of its belief." *Kaesong Corp.*, 2008 WL 1902684, at *2 (citing *White*, 81 N.Y. 2d at 957).

Here, Clifton Park claims that the circumstances surrounding the accident support a reasonable belief in non-liability. Specifically, Clifton Park contends that because there was no affirmative indication that IHOP was responsible for the fall, and because the Rippergers' post-accident conduct did not suggest that the Rippergers believed otherwise, its belief in non-liability was reasonable. (*See* Pl. Mem. of Law at 6-12, Dkt. No. 17.) In support of this argument, Clifton Park points to *Kambousi Rest., Inc., v. Burlington Ins. Co.*, in which the First Department held that an insured's belief in non-liability was reasonable and therefore sufficient to excuse its "five or six month delay" in notifying its insurer about an accident. 58 A.D.3d 513, 515 (1st Dep't 2009). However, given the factual disparity between *Kambousi* and the present case, Clifton Park's reliance on *Kambousi* is misplaced.

In *Kambousi*, a woman fell in the parking lot of the insured's diner, allegedly injuring her ankle. *Id.* at 514. *Id.* When the manager of the diner

13

asked if the woman wanted help or if he should call an ambulance, the woman's husband indicated that he had already called, and told the manager "not to worry" because his wife had tripped over her shoelaces. *Id.* In addition, the woman stated that "she was clumsy and fell." *Id.* Ultimately, the couple left the diner without giving the manager an opportunity to obtain further information for purposes of preparing an accident report, and there was no evidence that an ambulance ever appeared. *See id.* Based on this combination of facts, the First Department found that the manager had a reasonable basis to believe "that the couple would not seek to hold the diner's owner liable for the mishap." *Id.* at 515.

Here, unlike in *Kambousi*, neither Mr. nor Mrs. Ripperger made any affirmative statements indicating that Mrs. Ripperger was at fault for the incident, and the Rippergers did not prevent IHOP from collecting the information needed to generate an accident report. Moreover, while the Rippergers may not have expressly voiced a belief that IHOP was responsible for the fall, that fact alone does not justify a belief in non-liability. *Cf. Vradenburg v. Prudential Prop. & Cas. Ins. Co.*, 212 A.D.2d 913, 914 (3d Dep't 1995) ("[T]he fact that the injured party voiced the intent

14

not to sue anyone will not excuse the insured's delay when the facts and circumstances surrounding the happening of the injury are such that a reasonable person could envision liability." (citation omitted)). Further, and even more significantly, there was no evidence in *Kambousi* that the diner's manager was aware that the woman was transported from the scene in an ambulance, or even that an ambulance responded to the scene.

In this case, however, it is undisputed that Mrs. Ripperger was taken from the IHOP in an ambulance, and that Clifton Park management was aware of the incident within days of its occurrence. "New York courts have consistently found that knowledge that an injured person had to be taken from [an insured's] premises by ambulance should indicate a reasonable possibility that an insurance policy might be implicated by that accident." *Kaesong Corp.*, 2008 WL 1902684, at *3 (citations omitted). Therefore, as in *Kaesong*, "[t]he fact that [Mrs. Ripperger] suffered injuries in [Clifton Park's restaurant] that required immediate medical attention should have triggered a response from [Clifton Park] to at a minimum investigate the incident and contact its insurer." *Id.* However, Clifton Park made no effort to notify Travelers of the incident for more than five months after it occurred, and Clifton Park points to no evidence that it conducted a

15

reasonable investigation into the incident or the seriousness of Mrs. Ripperger's condition. Absent such evidence, Clifton Park has failed to establish that its belief in non-liability was reasonable under all the circumstances. *See id.* at \*4; *see also, e.g.*, *York Specialty Food, Inc., v. Tower Ins. Co. of N.Y.*, 47 A.D.3d 589, 590 (1st Dep't 2008) (holding, under nearly identical circumstances, that absent a reasonable investigation, an insured has "no basis for a good-faith belief in [its] non-liability"); *see also First Baptist Church of Olean v. Grey*, 63 A.D.3d 1512, 1514 (4th Dep't 2009) (holding that the insured could not rely on belief in non-liability where it failed to investigate an accident prior to concluding that it was "minor").

**C.    Prejudice**

Clifton Park next argues that, pursuant to a 2008 amendment to the New York State Insurance Law, its delayed notice does not invalidate its claim since Travelers' ability to indemnify or defend the claim was not prejudiced. *See* N.Y. INS. LAW § 3420(c)(2)(A). As Travelers points out, however, the cited amendment applies only to insurance policies issued on or after January 17, 2009. *See Briggs Ave. LLC v. Ins. Corp. of Hannover*, 11 N.Y.3d 377, 382 (N.Y. 2008) (noting that the 2008 amendment to § 3420(c)(2)(A) of the Insurance law is "applicable to policies issued on or

16

after January 17, 2009"). Therefore, because Clifton Park's policy was issued in October 2006, the 2008 amendment has no application to Clifton Park's claim, the common-law no-prejudice rule applies,[4] and Clifton Park's argument fails.

## D. Unfair Litigation Practices

Clifton Park's remaining argument is that Travelers should be estopped from disclaiming coverage because it engaged in unfair litigation practices. Specifically, Clifton Park alleges that Travelers (1) failed to notify the Rippergers' attorney that IHOP, Inc., as franchisor of Clifton Park, had coverage under the Clifton Park policy, and (2) sent a private investigator to Clifton Park employee Anna Olsen's house with a prepared, inaccurate affidavit for her to sign in the absence of counsel. (*See* Pl. Mem. of Law at 13-14, Dkt. No. 17.) The court finds no basis for estopping Travelers from disclaiming coverage on these grounds.

Initially, Clifton Park offers no explanation of or authority for its position that Travelers' alleged misconduct compels coverage under the policy. Moreover, as to the affidavit, the court has not considered it in

---

[4]The "no-prejudice rule" provides that "an insurer that does not receive timely notice in accordance with a policy provision may disclaim coverage, whether it is prejudiced by the delay or not." *Briggs*, 11 N.Y.3d at 381-82 (citations omitted).

17

rendering its decision. Thus, the conditions under which it was obtained and the inaccuracies it allegedly contains are of no moment. Accordingly, while the court does not condone the use of unethical litigation practices, it is not persuaded by Clifton Park's conclusory assertions that Travelers should be estopped from disclaiming coverage for what appear to be isolated, and ultimately insignificant, instances of questionable conduct. Therefore, Clifton Park's argument in this regard is rejected.

## V. <u>Conclusion</u>

In sum, because a five-month delay in notifying an insurer of an accident or occurrence is generally unreasonable as a matter of law, and because Clifton Park has failed to demonstrate a valid excuse for its five-month delay in notifying Travlers, the court finds that Clifton Park has not met the condition precedent to Travelers' liability. Accordingly, in light of Clifton Park's failure to comply with the policy's notice requirements, Travelers is entitled to judgment as a matter of law and is not required to defend or indemnify Clifton Park in the underlying Ripperger suit.

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that Travelers' motion for summary judgment (Dkt. No. 16) is **GRANTED** and Travelers is not obligated to defend or indemnify Clifton

18

Park in the underlying action involving Marilyn and Francis Ripperger; and it is further

ORDERED that the Clerk close this case and provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

August 26, 2010
Albany, New York

_____
United States District Court Judge